Chief Justice Robertson

dissenting from the descision of the majority of the court, delivered his own opinion in the following words:
The importance and novelty of the principal point involved in this case, render it proper, that I should suggest some of the reasons which will not allow me to concur in the opinion of the majority of the court.
No direct authority has been shown hy counsel or found by the court. Principle and analogy therefore, must decide the case.
The undertaking of an assignor to his immediate as-signee, of a promissory note, is simply, that the note shall be obligatory, and collectible by the employment of ordinary means. If the apparent obligor be not bound; or if, being bound, he be insolvent, or not sueable, the assignor is liable.
The liability of the assignor results, by implication of the law, from the privity of contract. Hence, it can be enforced by a legal remedj, only by the immediate assignee against his immediate assignor. A remote assignee has no legal right against a remote assignor.
Nor is it any part of the implied contract between assignor and assignee, that the former will not be liable to the latter for the obligor’s insolvency, until the note shall be returned; or the legal title to it or to the judgment upon it, vested in the assignor.
An assignee, after prosecuting the obligor to insolvency, cannot vest the assignor with a legal right to the judgment on the note; nor can he restore to him the legal right to the note, because it has been merged in the judgment. The only interest which an assignor can ever re-acquirein the note or judgment must be (if any at all) purely equitable; resulting from a payment by him, of the consideration for his assignment.
*312 The consideration as between assignor and assignee» fails» whenever the obligor shall have been in due time and manner, ascertained to be insolvent or not responsible. And the assignor cannot object to indemnifying the assignee, merely on the plea, that perhaps he (the assignee) may make something eventually out of the obligor, and may possibly not account for it. Such a pretext would be unavailing at law. It would be equally unreasonable to refuse the indemnity, no the pretext, that possibly the assignee had not indemnified his assignee, and therefore, might not be able, if the obligor should ever be worth any thing, to invest the obligee with an equitable control over the judgment on the note.
There may be other rights and obligations than the legal right and obligation, resulting from assignment; •as between assignor and assignee. But these can be ■equitable only.
The argument in favor of Berthoud, is illustrated by supposed cases of this sort. The answer to such argument is plain and easy.
A remote assignee may sue a remote assignor, and ■all the intermediate assignors in equity. He cannot sue the first without making all the others parties. They are all then liable to a suit in chancery. But can it be believed, that this contingent responsibility in equity, can operate a° a bar to the assertion by each assignee, of his legal right to recourse on his immediate assignor? The mere statement of the question seems to present the answer in the negative. It is a rule without any exception, that a suit at law cannot he barred by pleading or proving any equitable matter of defence, if the right is complete in law, no equta-ble objection can prevent a judgment at law in a suit to effectuate the legal' right. This results inevitably from the nature of legal and equitable rights and remedies; and from the independent and distinctive jurisdiction of courts of law and those of chancery. If, therefore, the assignees of Wood still r etain their control over the judgment, and have received no satisfaction from Wood, these facts, could not have been plead by Berthoud in bar of Wood’s action on his assignment; and consequently, it was not necessary for Wood to prove payment to his assignees. The non-payment *313 by W ood to bis assignees, if it present duly an equitable ■objection to a judgment in favor of Wood against Berthoud, could not avail Berthoud in the action of as-sumpsit on his assignment. It is true, that courts of law will sometimes notice and protect rights merely equitable. Thus, if one who has bought a note without any written transfer, shall sue the obligor in the name of the legal proprietor, a court 'of law will not suffer the nominal plaintiff to control the suit to the prejudice of the beneficial party. But there is not the slightest analogy between thiscaséánd that of Wood vs. Berthoud. These two cases may be made perfectly analagous in reason and principle, by a change in the circumstances which characterise the first. If a note which is not assignable be assigned by the obligee, or one which is assignable, be transferee! by delivery without assignment, the Iona fide holder has an equity •against the obligor.
Suppose the obligee institute a Suit at law, on the •note against the obligor, and the latter files a plea, averring the equitable right of the beneficiary, and also civerring, that if the plaintiff be permitted to get a judgment, he may collect the amount of it, and never pay it over to the person who, in equity is entitled to it, and that therefore, the defendant having notice of this equity, might be responsible in chancery; notwithstanding the judgment sought against him by the plaintiff Would such a plea be tolerated? Certainly not. It seems to me, that the matter of this plea, and that relied upon in this case, are of the same sp cies, and that each should have the like effect. In each case, the facts stated, are purely equitable, and therefore, cannot affect the legal remedy; and in each, the judgment at law, would forever discharge the defendant fromasuitin chancery, on thé pre-existing equity. In some cases; the same individual may be liable to suit by several different persons for the same thing, or to different forms of action by the same plaintiff. In any such case; a judgment by any one of the persons, or in any one of the modes of suit, will protect the defendant from suit for the same cause, by any of the othexs or in any other ■species of action. So if any person be liable to a suit in chancery by one, and to a suit at law by another for the same thing, a judgment in favor oí the party entitled to the legal remedy, will merge and forever bar *314 a suit in chancery hy the party entitled to the equitable remedy. Consequently, whatever may be thought of the equity of Wood’s assignees against Berthoud, Wood’s judgment will protect Berthoud from all responsibility to those assignees.
But it is said that Wood has no right to a judgment against Berthoud, until he can vest him with the right to the judgment which has been obtained on the note; and that he cannot do this, unless he has satisfied his assignees, who recovered the judgment. This too, is only equitable matter, if it be available at all.
If it were conceded, that the obligee acquires a beneficial interest in the note or judgment, hy paying his assignee, the concession could not benefit Berthoud. An assignor can never be restored to the legal right to the note -assigned, without a re-assignment. Re-im-hnrsing his assignee does not, “per se” vest the assignor with the legal right to, nor legal control over the note, or over a judgment which may have been obtained upon it by the assignee. The judgment belongs to the party who obtained it. It is not assignable hy law. Even an express sale of it, would vest in the purchaser only an equitable right to it. The common law judge could be appealed to, only to give his aid, by seeing that the assignor, holding the equity in the judgment, by paying his assignee, shall use the name of the assignee, for the purpose of enforcing the judgment, whenever, hy the solvency of the debtor, it may be enforced. This is all he can do. And therefore, the right of the assignor, in such a case is no more legal, than that of a transference of a note for a valuable consideration, without assignment, is legal. Each occupies the same groud, and each is equitable and no more than equitable.
In this case, if Wood has not paid his assignees, and Berthoud desires to use the eqnitabe right to the judgment, he is not without his remedy. lie may injoin Wood from proceeding with his judgment until, by-paying the Steeles, he shall place him in such a situation as to control the judgment. If he has aright to restitution of the note, (which is here neither denied nor admitted) he could be indemnified hy bill in chancery; and such a hill, againsl all parlies concerned, would be the only proper remedy. But it does not follow, that he- *315 cause he might, on equitable grounds injoin the judgment when obtained by filing a bill “quia timet,” he could prevent Wood from his legal right to get a judgment. This could be- done, only by some legal bar to the action.
It is true, that assumpsit is an equitable action; but it nevertheless, is governed by legal rules and principles. A matter purely equitable, as contradistinguished from that which is legal, cannot be used in bar of assumpsit.
I suppose that the counsel are mistaken when they assume, that Wood’s liability to the Ssteeles, is the foundation of his right to sue Berthoud. His right depends on his 'contract with Berthoud; and was complete, whenever the fieri facias wras returned “no property.’' His measure of recovery is the consideration which he gave for the note, not that which he received, and for which he was responsible to his assignees. If he gave the full amount of the note, and received only one fourth from the Steeles, he is entitled to what he paid, and it is immaterial how much or how little his assignees could exact from him. This shows that his liability on his assignment, is not the gravamen of his right of action against his assignor. And it tends also to prove, that as it is immaterial what he was liable for, it should be equally so, whether he has discharged that liability or not.
Suppose there are as many assignors and assignees, as there are letters in the alphabet, each assignment being for a different consideration, does the liability of each assignor to his assignee, depend on that of the latter to his assignee? And must all the subsequent assignors have paid their assignees, before the first as-signee can call on the first assignor? Must all the intermediate assignors pay their immediate assignees before the obligee, (who was the first assignor, and on whom the ultimate liability must devolve) can be called on to pay his assignee ? If this be so, and each should have to prosecute a suit, it might be fifty years before the obligee could be reached 1
This does not accord W'ith the justice and simplicity of rational law. Could not the obligee be discharged by a voluntary payment to his assignee? This cannot be denied.
*316 Suppose one in the series of assignments, be without recourse, does this deprive each assignee of all recourse on his assignor? And if it does, will not the effect be, according to the argument of the petition, that all the prior assignors are irresponsible to their assignees?
Suppose the last assignee (Z) having given not more than one tenth of the amount of the note for the assignment of (Y) to him, should prefer his chance of eventually making the judgment out of the insolvent debtor’, to an acceptance of the paltry consideration which the note cost him. He will not then sue his assignor, nor agree to receive- the sum which he advanced to him. Has Y, no right to the consideration, (it being the full value of the note) which he paid to W? And are all the letters in the alphabet thus, by this accidental circumstance, reduced to ciphers, and more than twenty contracts nullified?
It is more consistent with the analogies of the law, that each individual should have the benefit of his own contract, uncontrolled by the whim or the choice o'f any other person. It is no part of the contrac fc of assi gnment, if the assignee assign, his assignor shall not be responsible, if the last assignment should be without recourse, or (being for valuable consideration) that consideration should not be paid. Whenever the consideration fails, each assignee may demand, of his assignor, the fppount which he paid him, and no other can make the demand at law. The consideration clearly fails when the obligor is prosecuted to insolvency. The facts’that there was an assignmeut for a valuable consideration, and that the consideration has failed, is all that an as-signee plaintiff is bound to aver or prove. Any other matters are triable alone in chancery.
It is true, that if Wood has paid his assignees, Ber-thoud’a attitude, when he shall have paid Wood, will be somewhat different from that in which he would stand, without any such payment -by Wood. For although, if Wood paid the judgment creditors the consideration which he received from them for the note, he would hold no more than an equity in the judgment. Yet, a court pf law, on his application and proof of payment, would protect him in his equitable control over the judgment, and consequently, by receiving payment of Berthoud, he would transfer this right to protection, to him. Bato- *317 if Wood did not pay bis assignees, he cannot vest in Berthpud any equi table right to the judgment, because he has none himself; and, therefore, Berthoud could not call on a court of law to aid him in controlling the judgment.
^ This difference, however, in the two cases, is not material to the-principles which we are discussing. It is n>. t a difference in the nature of the right, but in the mode of asserting it. The right to the countenance of the common law judge, does not make the claim, which he will protect, a legal one. It is still an equity. Its essence cannot be changed.
' If Wood had not assigned the note, Berthoud, by paying him, would not thereby be restored to his legal right to the note or the judgment upon it.
He would only have an equity, which he may have, in this case, by paying Wood, provided Wood has paid the Steeles, or may procure by bill, if the Steeles have not been paid. But this cannot be done by law. It would be very difficult for the counsel to prove that a payment of the consideration for the assignment, by the assignor, to the assignee, would give to tire former any legal right to the j udgment, in favor of the latter against the obligor, on the note assigned. Such a task would be more than Herculean. The counsel have not ventured to undertake it. They have been content with making its virtual assumption the basis of their rpost imposing argument. If, then, as I think, is indisputable, a payment by the assignor to his assignee, who holds the judgment on the note, cannpt restore the assignor to his legal right to the note, nor vest in him any legal control oyer the judgment. I am not able to perceive how a payment by an assignee to his sub-assignee, can place the first assignor on any better or higher ground. The intermediate assignee acquires no legal right to the judgment, by paying his assignee, who holds it, and. pannot, therefore, impart to his assignor any such right, by recovering from him the consideration of the assignment.
The right which he thus transfers, is precisely that which he has to transfer, an equity.
This proposition is, therefore, resolved into a question which has already been noticed; that is, can equitable matter be pleaded in bar to a suit at law?
*318 But if it be necessary to the recovery, from an as. signor, by his assignee, who had assigned to another, that the assigned plaintiff should have been liable on his assignment, it is not necessary that his liability shall have been discharged. It is immaterial to the assignor defendant, whether the plaintiff had, exonerated himself from the liability incurred by his assignment, unless such, defendant be responsible for the same liability to the same individual. It is certain that he is not so re-, sponsible in law.
And here-1 think that the counsel have fallen into another error, when they say, that “it is believed that it may be laid down as a rule, universally true, and without exception, that a mere liability to be sued can never confer c, right of action at common law.”
This is a broad proposition, and it remains yet for the learned counsel to prove it. I presume that I was as much startled at its announcement as the counsel could have been at the sight, of our opinion. It requires very little research to show many cases in which a plaintiffmay recover on his own mere liability, to suit. A sheriff may maintain trover for goods, on which he had levied an execution, and in II Saunders, 47, one principal reason assigned for it is, that uthe sheriff is liable over.” So of all bailees. One reason for this right of action, is the special property in the sheriff or bailee but an important reason is his liability to the creditor or bailor.
If a person in custody of the sheriff for debt, escape, the sheriff may maintain an action of tresspass on the case against him, “because he is liable croer to the creditor Sulston and Offley, vs. Paine, Cro. Eliz. 234. And in such case, the sheriff need not wait until he shall have indemnified the creditor, nor until he shall be sued by him, because the fugitive might die or- leave the country or become insolvent in the- meantime; sheriffs of Norwich vs. Bradshaw, Cro. Eliz. 53. How aptly does this apply to the first assignor of a note which had been afterwards assigned by several different assignments? If the first assignee wait until all the subsequent assignees are indemnified, his assignor may be “law proof.”
*319 A purchaser of a chattle, either with bf withbut express warranty of title, may maintain an action against the seller, for defect of title, although he may still retain the property, and no suit has been brought against him for it; Furnace vs. Leicester, Cro. Ja. 474, and many other authorities, which might be cited. In this case, whether there was an express warranty or not, the law implies a warranty; and that is broken instantly if the seller has not title. But if the purchaser shall have sustained no damage and be permitted to retain the property, why should he recover its value of the seller? Because, chiefly,he is liable to the true owner; and it might be unsafe to wait until the institution of suit and a recovery by the owner. So it is exactly in the case of an assignee, whose liability to his assignee would, if there were no other reason for it, entitle him to an action against his assignor.
A covenant to indemnity against an existing liability incurred before the covenant, cannot be sued on before the liability has been enforced. But a covenant to indemnify against a future or contingent liability may be sued on, whenever that liability shall accrue, whether a suit has been brought to enforce it or not; II Commin’s Dig. 110, and the cases there cited; also, Lewis, et. al. vs. Crocket, III Bibb, 197. It is useless to multiply cases or citations. They are abundant, and the principle on which they depend is familiar to the gentlemen of the bar.
Whether, therefore, Wood’s right to sue Berthoud? without proof of payment to the Steeles, be tested by the contract of assignment, or by the mere liability of Wood to them, it ought not to be questioned.
His liability to his assignees was “yfer/’’ and that alone might entitle him to his action; Head’s Reps. vs. McDonald, VII Mon. 207.
I cannot concur with the counsel in their opinion of the necessity of a re-assignment of the note to Wood. If Wood, after his assignment, had sued the obligor on the note, it would have been necessary then, to show that he had a right to it. But even in such case, we are not inclined to concede that a re-endorsement would have been necessary. The authorities cited in the opinion show that if it were a bill of exchange a re-endorsement would not be necessary.
*320 And the reasons for this doctrine apply as well it* promissory notes. The main reason is, that the possession of the bill is prima fade evidence of a right to it. I cannot perceive why this presumption would not result in the case of a promissory note. I know that for many purposes there is an important difference between bills of exchange and promissory notes. The former are governed by the Hex niercatoriaf the latter chiefly by the ordinary rules of the common law.
But in the particular, under consideration, as well as in many others, I do not suppose that the rule ought to be exclusive in its application to the One case more than 'the other.
But be this as it may, the result iiithis case must be the same. For this is not a suit on the note against the '■obligor, in which ‘the plaintiff must show a right to the note before he can recover, but it is a suit on the contract implied by assignment, on which it is not necessary to prove title to théiiote. How a re-assignment to Wood, could be required in such a case, it seems difficult tó imagine. Besides, if there had been a re-assignment, what could it effect? It could surely not transfer the judgment upon the note» The note is mergéd in the judgment. The latter cannot be assigned, so as to vest in the assignee, the legal right to it. The cases relied on in the petition, apply to suits ly an enddrsor against the drawer; and not to a suit by an endorsee against an en-dorsor; or one endorsor against another.
The case of Welch vs. Lindo, VII Cranch, 159, bears no resemblance to this, and sheds not one ray of light upon it. Kercheval executed a note to Lindo, who assigned it to Welch without recourse. Welch assigned it to Hogshead, who brought suit on it. Ker-cheval plead payment to Lindo and succeeded on-proof. Welch then sued Lindó. His declaration contained two counts-.
1st. For money had and received to thé plaintiffs -use.
2d. A special assumpsit upon a statement of all the facts. The supreme court very properly decided thé case against Welch. The last count showed that hé 'ought not to recover, because it was on the assignment and that was without recourse-
*321 Welch ought not to have recovered on the first'count. Because.
1st. There was no evidence that he had given the 'nominal amount of the note to Lindo; and that he had, could not be inferred from assignment without recourse. There was no proof of the consideration which he did pay. And on such an assignment, the law could not imply any particular amount of consideration.
2d. It did not appear that Lindo had received the amount of the note to the use of Welch* It not only did not appear that when the money was received, Welch was entitled to it, but the presumption was strong, that he was not. It was, therefore, from any thing that was shown or should have been inferred, paid by Kercheval to the use of Hogshead; and Welch could not, by paj'ing Hogshead, convert the payment to the use of Hogshead into á payment to his own use. He ought either to have sued in the name of Hogshead, or declared specially in his own name, in a count constructed differently from either of those contained in his declaration.
3rd. The possession of the note by Welch was not evidence, that the note belonged to him when the money was paid; nor of a payment by him to Hogshead. There was no proof of payment to Hogshead, except what might be inferred from the possession of thé note by Welch.
Welch could not recover, as Wood can, oh his assignment, because it was without recourse. He could then, only recover, if at all, by proof of payment to Hogshead. There was no proof of this. And certainly in such a case, his possession of the note ought not to be considered sufficient evidence, that he had paid Hogshead. He might have procured it without the knowledge or consent of Hogshead. And it is probable that if he had paid Hogshead, the asssign-inent would have been cancelled, or the note would have been re-assigned. Such a re-assignment might have created a presumption of such payment, and therefore, in the absence of more direct proof, it was important that the note should have shown a re-assign-rnent. But a re-assignment without payment would not have vested the right of action in Welch. It was *322 the fact of payment and not a right to the note after it was paid off, which could give Welch any right to re- . cover of Lindo. The only effect, therefore, of a re-assignment would have been, not “per se” to transfer the right to sue Lindo, hut to create presumptive evidence of a payment by Welch to lindo..
When the opinion of the supreme court is scrule-nized, it will he found-to resolve itself into this view of' the subject. It does not say nor even intimate, that in a suit by an assignee against his assignor on the assignment, it is necessary to produce the note or prove title to it by the plaintiff; and therefore, is perfectly consistent with my oydnion in this case.
Nor can I concur with the counsel in the opinion, that “all the right that Wood had to the contingent liability of Berthoud, he transferred to the Steeles by his assignment to them,” &c. Wood did not transfer his right, to recover the consideration which he paid Ber-thoud. The Steeles may have given Wood a less consideration. Wood had a legal right to recourse from, Berthoud, on his assignment to him. This he did not, could not transfer to the Steeles. The only right assigned to them, was the legal right to sue on the note:; and the equitable right to sue all the assignors in chancery, in the event of a failure of the obligor. - And a voluntary payment by Berthoud to Wood, would have released him from any contingent liability to the Steeles. The Steeles could not release Berthoud from his contraer with Wood. Wood assigned the note, not his contract with Berthoud; nor his right to recourse on Berthoud.,
If A for $100, assign a note to B, and B assign it to C for the consideration of $50, C could recover from B only $50; B would be entitled to $100. C could not recover any thing from A, by a common law suit; and if he should sue in chancery, he could hold A responsible for only $50.
Suppose, after C had prosecuted the obligor to insolvency, B should sue A on Ids assignment, could A plead in bar of his suit, that B had not paid C the $50 which C would have aright to demand of him? If IS had not paid the $59 to C, A might be held liable to C for that amount in equity, but if he pay his assignee, he will not he liable at all. But could a possible liabi iity in equity for $50 bar a fixed legal liability for $100'!
*323 Suppose the note he spurious; may not B recover from A the consideration of the assignment, without havingpaid C, or without offering to return the note to A? 4É
Suppose the obligee had collected the amount of the note, either before or after his assignment, may not his assignee recover the consideration, without restoring to him the note, or without showing that he had paid his assignee?
Suppose B, after the assignment to him, ascertaining that the obligor is insolvent, and apprehending also, that A is insolvent, assign the note to C for $10 without recourse, can he maintain no suit against A, until he shall have paid to C the $10. C will not accept the $10, because he prefers the chance of eventually making the judgment which he had obtained on the note. B has sustained a loss to the extent of the difference between $100 which he gave, and $10 which he got. A covenanted to indemnify him; how is the indemnity to be enforced, unless it can be done by a suit on the assignment?
Is not the assignor responsible as soon as the obligor shall be ascertained by legal means, to be insolvent? To whom is he responsible? To Ais assignee, and to no other person. Does not the consideration fail, the instant when the obligor is prosecuted to insolvency? It seems to me that it does. If so, at the same instant, the cause of action accrues. The obligee must be liable to a suit on his contract. Suppose the assignee of the obligee should not sue his assignor within five years succeeding the. return of the execution against the ob-ligor; the obligee, when sued, pleads the statute of limitations. Will the plaintiff (his assignee) be permitted to reply, that he had neglected to pay to his as-signee the consideration for his assignment? Surely not.
Then he must sue within five years after the return, fixing the insolvency. It follows, that if he cannot succeed in his suit, unless he prove payment to his as-signee, he may never be able to recover at all. For, without his fault, more than five years may be consumed in controversies between subsequent assignors and assignees. Besides, if there had been twenty subsequent *324 assignments, would it not be unreasonable to require the first assignee, when he sues the obligee, to prove . that each assignor had re-imbursed his assignee? This would not only be inconvenient and opj§£>ssive, but might often be impossible. It cannot be necessary, in jpy opinion, for any practical, useful, or legal purpose.
The vendor of a slave, when sued on his warranty of' title, cannot plead that his vendee had sold the slave, and therefore, could not restore the possession; nor, could a vendor of a chattel plead (when sued for the consideration, on the ground that the thing was of no va]ue, and had been falsely represented by him,) that the plaintiff had not restored and could not restore the . possession of it, The consideration may have failed in such a case, although the slave may possibly, afterwards become of some value.
When by legal means, an obligor is ascertained to be insolvent, the obligation is considered of no value. In contemplation of law, it is. worth nothing. Why then, in such a case, should the assignor he allowed to refuse indemnity to his assignee, upon the pretext, that the obligor may become solvent, and that the assignee had not indemnified his assignee, and thereby given to the assignor an equitable right to control the judgment?
The law will not presume that the obligation is of any value. Prospective possibilities will not be considered. Record evidence of the insolvency, cannot be disputed; and must be admitted as conclusive.
The consideration between Wood and Rerthoud had failed as soon as the obligor was prosecuted to insolvency. The fact that Wood’s assignees had not enforced their claim against him, eannot show that his consideration had not failed.
If the obligor should ever become able to discharge the judgment, the assignor may be entitled in equity, to whatever can be made. -His assignee may collect it, and never pay it over to him. Then assumpsit, for money had and received to his use, might be maintained. The assignee would be equally resposible, if his assignee collect the amount of the judgment. The hazard of the obligee is therefore, not increased by subsequent assignments. If, after he shall have indemnified his assignee, the obligation shall be enforced and *325 the amount of it collected by the assignee or any other person holding under him, he and he alone, will be responsible to the obligee. The possibility, that the obli-gor may become able to discharge the judgment, and that then, the remote assignee may collect the amount of it, should therefore, be no more available, than the possibility that the immediate assignee, who never assigned the note, but obtained the judgment in his own name, might eventually collect the amount of it. The latter defence, would be unavailing, and consequently, the former should be equally so. They are both equities and nothing else.
The liability of the assignor, cannot be suspended or postponed, by an assignment by his assignee. Such subsequent assignment does not change’the character or effect of the first assignment. The last assignment can-notincrease the responsibility of the obligee; it should not therefore, diminish or destroy it.
An assignor for a valuable consideration, surely is not absolved, by assignment by a remote assignee, without recourse. But such would be the inevitable legal consequence of the doctrine, that every subsequent assignee must give to his assignor an equitable right to the note, before the first assignee can sue the obligee.
Whenever the obligor has been prosecuted to insolvency, my opinion is, that each assignee may sue his assignor, and that each assignor may pay his assignee, without regard to subsequent assignments; and that if any assignor shall really apprehend that he may eventually sustain an injury, his only remedy, is to file his bill and have all the assignments adjusted.
No principle or analogy, with which I am acquainted, requires of Wood to prove that he had paid his assignees. If he had proved it, I cannot imagine how the proof would have benefitted Berthoud. It could not conclude the Steeles who are not parties; they might still insist that they had never parted with their right,legal or equitable, to the judgment; and whether they had or not, could not be important, because if they had, Berthoud would not have the legal right, and the whole right is deemed by the law, to be of no value. I am inclined to think too, that a jury might have inferred payment by Wood to his assignees.
*326 Without time to methodise and condense the foregoing considerations, hastily sketched, I submit them, crude as they are, as some apology for my dissent from the opinion of my associates.